ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CARLOS E. COLÓN BURGOS Y XIOMARA S. RIVERA RODRÍGUEZ<br><br>RECURRIDOS<br><br>v.<br><br>PEDRO RIVERA DURÁN; VERSATECH, INC.; VERSATECH PRODUCTS, INC.; PRIME DEVELOPMENT CORPORATION Y TU FARMACIA MÓVIL CORP.<br><br>PETICIONARIOS | KLCE202500475 | *Certiorari p*rocedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil Núm..: CG2023CV01429<br><br>Sobre: Sentencia declaratoria; Petición de disolución de corporaciones de empresa común de dos accionistas; Incumplimiento de contrato; Violación del deber de la buena fe contractual; Daños y perjuicios |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres y el Juez Pagán Ocasio[1]

**Ortiz Flores, Jueza Ponente**

### RESOLUCIÓN

En San Juan, Puerto Rico, a 30 de mayo de 2025.

Comparece el señor Pedro Rivera Durán, Versatech, Inc., Versatech Products, Inc., Prime Development Corporation y Tu Farmacia Móvil Corp. (en conjunto, peticionarios) mediante el recurso de epígrafe y nos solicitan que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI), el 28 de marzo de 2025 y notificada el 1 de abril de 2025.

Adelantamos que, en el ejercicio de nuestra discreción, denegamos expedir el auto de *certiorari* presentado.

---

[1] Mediante la Orden Administrativa OATA-2025-066 del 6 de mayo de 2025, se designó al Hon. Ángel R. Pagán Ocasio para entender y votar en sustitución de la Hon. Camille Rivera Pérez debido a que dejó de ejercer funciones como Jueza del Tribunal de Apelaciones.

**I**

El 8 de mayo de 2023, el señor Carlos E. Colón Burgos y la señora Xiomara S. Rivera Rodríguez (en conjunto, recurridos) presentaron una *Demanda* donde alegaron ser codueños de las empresas Versatech, Inc., Versatech Products, Inc., Prime Development Corporation y Tu Farmacia Móvil Corp., por lo que solicitaron se emitiera una sentencia declaratoria a tales efectos. Además, solicitaron la liquidación y disolución de las corporaciones que tienen en común, el resarcimiento por concepto de daños contractuales, violación a la buena fe contractual y por daños extracontractuales solicitando una compensación total de $3,000,000.00.[2] A raíz de que el caso ante nos tuvo su inicio hace ya más de dos años, su tracto procesal es uno extenso. Por tal motivo, nos circunscribiremos a mencionar los incidentes pertinentes a la controversia que nos atañe. Dicho lo anterior, fue el 29 de enero de 2025 que los peticionarios presentaron una *Moción Solicitando Sentencia Sumaria* donde esencialmente solicitaron al tribunal que desestimara sumariamente las reclamaciones contenidas en la *Demanda* de los recurridos y declarara con lugar las reconvenciones de los peticionarios.[3]

Luego de evaluar los documentos presentados en los escritos de ambas partes, el TPI determinó como hechos incontrovertidos los siguientes:

### A. **Versatech**

1. El 23 de marzo de 2005, el Sr. Colón Burgos y el Sr. Rivera Durán incorporaron conjuntamente a Versatech ante el Departamento de Estado bajo el número de registro 15414, designándose como Directores de la corporación.

2. Surge del Certificado de Incorporación que Versatech tendría autoridad para emitir 500 acciones, con un valor de $1,000.00 cada una, para un capital autorizado de $500,000.00.

---

[2] Apéndice del recurso, págs. 1-33.
[3] Apéndice del recurso, págs. 267-297.

3. Tras la incorporación de Versatech, el Sr. Rivera Durán pasó a ocupar las posiciones de Presidente y Tesorero y el Sr. Colón Burgos las de Vicepresidente y Secretario de la corporación.

4. Por años, y a la fecha de la radicación de la Demanda Jurada, Carrasquillo CPA Group ha sido la firma de contabilidad de Versatech, Versatech Products, Prime Development y Tu Farmacia Móvil.

5. La firma Carrasquillo CPA Group preparó los estados financieros auditados de Versatech para los años 2008 y 2017.

6. Surge de los estados financieros auditados de Versatech, preparados por Carrasquillo CPA Group para el año contributivo terminado el 31 de diciembre de 2008, que el interés de los accionistas en la corporación ("Stockholder's Equity") eran 500 acciones comunes autorizadas, con un valor de $1,000.00 cada una, no emitidas y en circulación ("Common stock, $1,00[0] par value, authorized 500 shares non issued and outstanding").

7. Surge de los estados financieros auditados de Versatech, preparados por Carrasquillo CPA Group para el año contributivo terminado el 31 de diciembre de 2017, que el interés de los accionistas en la corporación ("Stockholder's Equity") eran 500 acciones comunes autorizadas, con un valor de $1,000.00 cada una, no emitidas y en circulación ("Common stock, $1,00[0] par value, authorized 500 shares non issued and outstanding").

8. En un sinnúmero de ocasiones a través de los años, el Sr. Rivera Durán y el Sr. Colón Burgos se representaron ante terceros como los fundadores, accionistas principales o socios de Versatech.

**B. Versatech Products**

9. El 21 de septiembre de 2011, Versatech Products fue incorporada en el Departamento de Estado bajo el número de registro 304275.

10. En el Certificado de Incorporación de Versatech Products el Sr. Rivera Durán fue denominado Presidente y Tesorero y el Sr. Colón Burgos Vicepresidente y Secretario; a su vez, ambos fueron denominados Directores de la corporación.

**C. Prime Development**

11. El 2 de julio de 2018, Prime Development fue incorporada en el Departamento de Estado bajo el número de registro 412024.

12. El Sr. Rivera Durán fue designado como el único director y oficial de Prime Development.

13. El Sr. Colón Burgos no ha realizado pago alguno por concepto de arrendamiento de la Propiedad en Finca Elena.

### D. **Tu Farmacia Móvil**

14. El 8 de abril de 2019, Tu Farmacia Móvil fue incorporada en el Departamento de Estado bajo el número de registro 425636.

15. El Sr. Colón Burgos firmó como garantizador en los acuerdos suscritos con los suplidores de Tu Farmacia Móvil.

### E. **Vehículos de Motor**

16. Versatech Products adquirió el vehículo Ford Transit Connect XL del año 2019, tablilla 1026622, VIN# NM0LS6E26K1431280 (en adelante, la "Transit Connect").

17. El vehículo BMW X5, año 2021, tablilla JRJ191, VIN# 5UXTA6C01M9H39390 modelo X5 (en adelante, la "BMW X5") lo maneja el Sr. Colón Burgos.[4]

Por otro lado, como hechos que se hallan en controversia, determinó los siguientes:

1. Si, previo a la incorporación de Versatech, Versatech Products, Prime Development y Tu Farmacia Móvil, el Sr. Colón Burgos y el Sr. Rivera Durán acordaron verbalmente que serían socios y accionistas en igual participación, adviniendo cada uno dueño del 50% de las acciones de dichas compañías, y que todo beneficio y/o ganancia generada por éstas sería dividido entre los dos accionistas en partes iguales.

2. Si, previo a la adquisición de la Propiedad en Finca Elena, el Sr. Colón Burgos y el Sr. Rivera Durán acordaron que, aunque ésta fuese adquirida a través de Prime Development, la referida residencia pertenecería exclusivamente al Sr. Colón Burgos

3. Si la Propiedad en Finca Elena se adquirió con las distribuciones, ganancias y/o beneficios que le correspondían al Sr. Colón Burgos como codueño de las compañías.

4. Si el Sr. Rivera Durán recibió como distribución, ganancia y/o beneficio de las compañías una cantidad equivalente al costo de adquisición de la Propiedad en Finca Elena como parte de un acuerdo con el Sr. Colón Burgos en cuanto a las residencias personales de éstos.

---

[4] Apéndice del recurso, págs. 2253-2255.

5. Si, previo a la adquisición de la BMW X5, el Sr. Colón Burgos y el Sr. Rivera Durán acordaron que dicho vehículo sería propiedad de los Demandantes, aunque éste fuese adquirido a través de Prime Development.

6. Si los pagos correspondientes a la BMW X5 se realizaban con las distribuciones, ganancias y/o beneficios que le correspondían al Sr. Colón Burgos como codueño de las compañías y/o con el salario o beneficios que le correspondían a la Sra. Rivera Rodríguez como empleada o contratista independiente de las compañías.

7. Si previo a la adquisición del vehículo Porsche Cayenne, año 2022, tablilla JRX047, VIN# WP1BE2AY6NDA51169 (en adelante, la "Porsche"), el Sr. Colón Burgos y el Sr. Rivera Durán acordaron que dicho vehículo sería de los Demandantes, aunque éste fuese adquirido a nombre de una de las compañías.

8. Si los pagos correspondientes a la Porsche se realizaban con las distribuciones, ganancias y/o beneficios que le correspondían al Sr. Colón Burgos como codueño de las compañías y/o con el salario o beneficios que le correspondían a la Sra. Rivera Rodríguez como empleada o contratista independiente de las compañías.

9. Si, luego de la adquisición de la Transit Connect por parte de Versatech Products, el Sr. Colón Burgos y el Sr. Rivera Durán acordaron que dicho vehículo pertenecería al Sr. Colón Burgos.

10. Si los pagos correspondientes a la Transit Connect se realizaban con las distribuciones, ganancias y/o beneficios que le correspondían al Sr. Colón Burgos como codueño de las compañías y/o con el salario o beneficios que le correspondían a la Sra. Rivera Rodríguez como empleada o contratista independiente de las compañías.[5]

Tal y como mencionamos, en la solicitud de que se dicte sentencia sumaria, los peticionarios hicieron referencia a las cinco (5) causas de acción presentadas por los recurridos. Luego de realizados los trámites de rigor, el foro primario declaró No Ha Lugar la solicitud y decidió continuar con los procedimientos del caso. Para sustentar su dictamen, el TPI individualizó las causas de acción y apoyó sus fundamentos en derecho. Las primera y segunda causa de acción, ambas fueron discutidas en conjunto por guardar

---

[5] Apéndice del recurso, págs. 2255-2256.

relación entre sí. La controversia gira en torno a si se había acordado entre el Sr. Colón Burgos y el Sr. Rivera Durán un contrato verbal que los estableciera como dueños por partes iguales de las corporaciones en cuestión, y a su vez la solicitud de disolución y liquidación de dichas empresas. Al respecto el foro primario determinó lo siguiente:

> Dado que los Demandantes controvirtieron prácticamente la totalidad de los Hechos Propuestos contenidos en la Moción, resolvemos que no corresponde resolver por la vía sumaria, la primera causa de acción de la Demanda, mediante la cual los Demandantes solicitan que se resuelva si en efecto, el Sr. Colón Burgos y el Sr. Rivera Durán perfeccionaron contratos verbales, mediante los cuales, éstos hayan acordado ser socios, en un 50%, de las compañías y dividirse en igual proporción sus ganancias y beneficios. Esta controversia se atenderá durante el juicio en su fondo.[6]

Por consiguiente, al necesitar establecer la primera causa de acción para resolver la segunda, para esta última el tribunal tampoco estaba en posición de resolverla sumariamente.

La tercera y cuarta causa de acción presentadas por los peticionarios en su demanda constaban de resarcimiento de daños por incumplimiento de contrato y violación a al principio de buena fe contractual. En cuanto a ambas, estableció el TPI que en la *Demanda* se alegó que desde la incorporación de Versatech en el 2005, el Sr. Colón Burgos y el Sr. Rivera Durán disfrutaban de todos los beneficios atribuibles a las compañías por partes iguales. Por ello, el foro primario fundamentó sus conclusiones como sigue:

> [...]En la medida en que el Sr. Colón Burgos no ha estado recibiendo dichos beneficios económicos (que presumiblemente sí ha estado recibiendo el Sr. Rivera Durán durante la pendencia del pleito), el Demandante puede reclamar personalmente del Sr. Rivera Durán como daños derivados de la violación contractual la pérdida de dichos beneficios desde la ruptura de la relación comercial en abril de 2023. Claro está, esto está **sujeto a que el Sr. Colón Burgos pruebe en juicio plenario la existencia de los contratos verbales alegadamente violados por el Sr. Rivera Durán**. Igualmente, el Sr. Colón Burgos pudiera reclamar que

---

[6] Apéndice del recurso, pág. 2265.

el Sr. Rivera Durán le compense por las expectativas de negocio frustradas como lo sería lo que esperaba generar del alegado centro de envejecientes planificado".[7]

La quinta causa de acción era referente a la reclamación de daños extracontractuales por los cuales los peticionarios arguyeron no son procedentes por tratarse de una solicitud de indemnización doble. En cuanto a esto, el TPI dictaminó lo siguiente:

El planteamiento es incorrecto. Nuestro ordenamiento reconoce que "una misma conducta puede dar origen a dos (2) tipos de causa de acción diferentes: una fundamentada en el concepto negligencia y la otra cimentada en las obligaciones contraídas mediante un acuerdo previo". Maderas Tratadas v. Sun Alliance, 185 DPR 880, 910 (2012). Cónsono con ello y con la Regla 14.1 de Procedimiento Civil, los Demandantes podían acumular en la Demanda "tantas reclamaciones independientes o alternativas como tenga contra la parte adversa". 32 L.P.R.A., Ap. V, R. 14.1.

Ahora bien, "no procede la indemnización conjunta por ambos tipos de acción, puesto que ello conllevaría una duplicidad de remedios. El resarcimiento procederá únicamente por una sola de las reclamaciones". Maderas Tratadas v. Sun Alliance, *supra*, p. 911. De los Demandantes lograr probar sus reclamaciones durante el juicio en su fondo, le corresponderá al Sr. Colón Burgos aclarar por cuál de las dos vías optará para obtener la reparación satisfactoria de sus daños antes de que dictemos una sentencia. Ramos v. Orientalist Rattan Furnt., Inc., 130 D.P.R. 712, 726 (1992).

Finalmente, los Codemandados arguyen que la Sra. Rivera Rodríguez no tiene derecho a reclamar ningún daño, puesto que los Demandantes no alegan que ésta fue parte de los contratos verbales entre el Sr. Colón Burgos y el Sr. Rivera Durán. Si bien coincidimos con que la Demanda no incluye alegaciones a esos efectos, ello no supone que ésta no tiene una reclamación por daños extracontractuales. Un examen de la Demanda revela que la reclamación de daños de la Sra. Rivera Rodríguez no está supeditada exclusivamente al alegado incumplimiento contractual del Sr. Rivera Durán, sino de una serie de presuntos actos torticeros ejecutados por éste.[8]

Por último, el foro primario atendió el reclamo referente a que se declarara con lugar las reconvenciones presentadas por los peticionarios. En cuanto a estas reiteró su postura en cuanto a que

---

[7] Apéndice del recurso, pág. 2268.
[8] Apéndice del recurso, págs. 2269-2270.

estos asuntos no se podían atender hasta tanto se resolviera la controversia medular de si hubo contrato verbal o no entre el Sr. Colón Burgos y el Sr. Rivera Durán.[9]

Inconforme con la decisión, los peticionarios acudieron ante este foro revisor y plantearon en su recurso los siguientes señalamientos de error:

**PRIMER ERROR**
ERRÓ EL TPI AL DETERMINAR QUE LA REPRESENTACIÓN QUE REALIZÓ EL SR. COLÓN BURGOS EN UN TRIBUNAL, DE QUE ERA EMPLEADO Y NO ACCIONISTA, NO ES SUFICIENTE PARA DESESTIMAR SUMARIAMENTE TODAS LAS RECLAMACIONES.

**SEGUNDO ERROR**
ERRÓ EL TPI AL ACOGER LA DECLARACIÓN JURADA QUE ANEJARON LOS RECURRIDOS CON SU OPOSICIÓN A MOCIÓN DE SENTENCIA SUMAR[I]A YA QUE PROCEDÍA EXCLUIR LA MISMA POR CONSTITUIR UN "SHAM AFFIDAVIT".

**TERCER ERROR**
ERRÓ EL TPI AL DETERMINAR QUE NO CORRESPONDE RESOLVER POR LA VÍA SUMARIA LA PRIMERA CAUSA DE ACCIÓN DE LA DEMANDA.

**CUARTO ERROR**
ERRÓ EL TPI AL NO DESESTIMAR LA QUINTA CAUSA DE ACCIÓN DE LA DEMANDA SOBRE DAÑOS Y PERJUICIOS POR[QUE] LOS RECUR[R]IDOS ESTÁN SOLICITANDO REMEDIOS DUPLICADOS Y POR[QUE] LA SRA. RIVERA RODRÍGUEZ NO TIENE DERECHO A DICHA CAUSA DE ACCIÓN.

Oportunamente, el 12 de mayo de 2025, los recurridos presentaron su oposición al recurso, por lo que este quedó perfeccionado para su adjudicación.

## II

### A

El auto de *certiorari* es el vehículo procesal extraordinario "que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior". *Rivera et al. v. Arcos Dorados*, 212 DPR 194, 207 (2023), que cita a *IG Builders v.*

---

[9] Apéndice del recurso, págs. 2270-2271.

*BBVAPR,* 185 DPR 307, 337-338 (2012). Se trata de un recurso discrecional, para el cual existen unos parámetros que sirven de guía al momento de decidir si debemos expedir o denegar el auto. *IG Builders v. BBVAPR, supra.* De esta forma, el asunto que se nos plantee en el recurso de *certiorari* debe tener cabida dentro de alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 (Regla 52.1). Particularmente, en cuanto al *certiorari* para revisar dictámenes interlocutorios del foro primario, en su parte pertinente, la Regla 52.1 dispone lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. [...]. **Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.** [...] (Énfasis nuestro.)

Así pues, a este foro intermedio le corresponde realizar un análisis dual para determinar si se expide o no un auto de *certiorari*. Este examen consta de una parte objetiva y otra parte subjetiva. Por ello, en primer lugar, tenemos que auscultar si la materia contenida en el recurso de *certiorari* tiene cabida dentro de alguno de los asuntos establecidos en la Regla 52.1, toda vez que esta enumera taxativamente bajo qué materias, solamente, se podrá expedir el auto de *certiorari*. En aquellos casos en los que el asunto no esté comprendido dentro de la norma, el tribunal revisor debe negarse a expedir el auto de *certiorari* automáticamente. Superada esta etapa, analizamos si bajo la discreción concedida a este tribunal revisor mediante la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40 (Regla 40), debemos o no expedir el auto de *certiorari*. Como se sabe, la Regla 40 establece los criterios que debemos tomar en consideración para determinar si expedimos o no un auto de <u>*certiorari*</u>, como sigue:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

A su vez, los foros apelativos "no debemos intervenir con el ejercicio de la discreción de los foros de instancia, salvo que se demuestre que hubo un craso abuso de discreción, perjuicio, error manifiesto o parcialidad". *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), que cita a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Asimismo, con relación a determinaciones interlocutorias discrecionales procesales, no debemos sustituir nuestro criterio por el ejercicio de discreción del tribunal de instancia, "salvo cuando dicho foro haya incurrido en arbitrariedad o craso abuso de discreción". *Meléndez v. Caribbean Int'l News*, 151 DPR 649, 664 (2000).

Finalmente, es norma reiterada que al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. A su vez, los foros apelativos no debemos intervenir con las decisiones de los tribunales de instancia, "salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma

procesal o de derecho sustantivo, y que [la] intervención en esa etapa evitará un perjuicio sustancial". *Lluch v. España Service Sta.*, *supra*, pág. 745.

**B**

En nuestro ordenamiento jurídico, la sentencia sumaria se rige por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V. R. 36. Este mecanismo "responde al propósito de aligerar la conclusión de los pleitos eliminando el juicio en su fondo, pero siempre y cuando no exista una legítima disputa de hecho a ser dirimida, de modo que lo restante sea aplicar el derecho solamente". *Jusino et als. v. Walgreens,* 155 DPR 560, 576 (2001). Conforme la letra de la Regla 36. 1 de Procedimiento Civil, 32 LPRA Ap. V R. 36.1, para poder adjudicar en los méritos una moción de sentencia sumaria a favor del reclamante, lo que se requiere es que se presente "una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente" ya sea sobre la totalidad de la reclamación o parte de esta. En este sentido, un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable." *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 110 (2015). Por ello, "[l]a controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario". *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).

En armonía con lo anterior, la sentencia sumaria solo debe dictarse en casos claros. Si no existe certeza sobre todos los hechos materiales en la controversia, no procede que se dicte sentencia sumaria. Sin embargo, se ha establecido que la sentencia sumaria, "[p]rocede, aunque se hayan alegado hechos que aparenten estar en controversia, pero cuando el promovente logre demostrar

preponderantemente, y mediante dicha prueba documental, que en el fondo no existe controversia sobre los hechos medulares". *Jusino et als. v. Walgreens, supra*, pág. 577. Ante esta situación, la parte promovida debe "defenderse de la misma forma, es decir, apoyándose a su vez de documentos u otra evidencia admisible". *Id.*

Asimismo, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece unos requisitos de forma a ser cumplidos por la parte promovente y la parte promovida. Si el promovente incumple con los requisitos de forma, "el tribunal no estará obligado a considerar su pedido". *Meléndez González v. M. Cuebas, supra*, pág. 111. Del mismo modo, si el promovido es quien incumple dichos requisitos "el tribunal puede dictar Sentencia Sumaria a favor de la parte promovente, si procede en derecho". *Id.*

En fin, toda vez que la sentencia sumaria es un remedio de carácter discrecional, "[e]l sabio discernimiento es el principio rector para su uso porque, mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido proceso de ley". *Mgmt. Adm. Servs. Corp. v. E.L.A.,* 152 DPR 599, 611 (2000). Siendo esto así, solo procede que se dicte la sentencia sumaria "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el Derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Meléndez González v. M. Cuebas, supra*, págs. 109-110, que cita a *Const. José Carro v. Mun. Dorado,* 186 DPR 113 (2012).

Según se ha reiterado jurisprudencialmente, este tribunal revisor se encuentra en la misma posición que el foro de primera instancia al determinar si procede o no una sentencia sumaria. Sin embargo, al revisar la determinación del tribunal primario, estamos limitados de dos maneras: (1) considerar solamente los documentos

que se presentaron ante el foro de primera instancia; y (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Esto es, estamos impedidos de adjudicar los hechos materiales esenciales en disputa. *Vera v. Dr. Bravo*, 161 DPR 308, 334-335 (2004). El deber de adjudicar hechos materiales y esenciales es una tarea que le compete al Tribunal de Primera Instancia y no al foro intermedio.

A esos efectos, el Tribunal Supremo de Puerto Rico estableció el estándar específico que debemos utilizar como tribunal revisor al momento de evaluar determinaciones del foro primario en las que se conceden o deniegan mociones de sentencia sumaria. En lo pertinente, dispuso que "[l]a revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor". *Meléndez González v. M. Cuebas*, *supra*, pág. 118. Además, reiteró que, por estar en la misma posición que el foro primario, revisaremos que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma recopilados en la Regla 36 de Procedimiento Civil. *Id.* Por lo cual, luego que culminemos nuestra revisión del expediente, de encontrar que en realidad existen hechos materiales y esenciales en controversia, debemos tener en cuenta el cumplimiento de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V R. 36.4, y exponer concretamente cuáles hechos materiales están controvertidos y cuáles están incontrovertidos. Por el contrario, de resultar que los hechos materiales y esenciales realmente están incontrovertidos, entonces nos corresponde **revisar de *novo* si el foro impugnado aplicó correctamente el derecho a los hechos incontrovertidos**. *Id.*, pág. 119.

**III**

Los peticionarios acuden ante nosotros con cuatro señalamientos de error que en apretada síntesis señalan que el foro primario erró en no declarar Ha Lugar su solicitud de sentencia sumaria. Primeramente, por tratarse de un recurso de *certiorari*, nos corresponde evaluar si los asuntos ante nuestra consideración versan sobre alguna de las materias contenidas en la Regla 52.1 de Procedimiento Civil. La contestación a dicha interrogante es en la afirmativa, ya que se recurre de la denegación de una moción dispositiva. Lo anterior, ciertamente, incide sobre un asunto contenido en la Regla 52.1. De tal forma, tenemos jurisdicción bajo dicha disposición legal. Ahora bien, en segundo lugar, debemos examinar el asunto que se nos plantea a la luz los criterios contenidos en la Regla 40 de nuestro Reglamento.

Luego de revisar *de novo* los documentos que acompañaron la moción de sentencia sumaria presentada por los peticionarios, así como la oposición de los recurridos, y la *Resolución* por la cual se recurre, no encontramos que el TPI haya incurrido en un abuso de discreción o que haya actuado bajo prejuicio o parcialidad que acarree un fracaso de la justicia. Tampoco se demostró que el foro recurrido se haya equivocado en la interpretación o aplicación de una norma procesal ni que, intervenir en esta etapa, evitaría un perjuicio sustancial contra la parte peticionaria. Por ello, cónsono con los principios antes esbozados, resolvemos denegar la expedición del auto de *certiorari*.

**IV**

Por los fundamentos que anteceden, denegamos expedir el auto de *certiorari* solicitado. En consecuencia, devolvemos el caso al foro primario para la continuación de los procedimientos.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones